| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I | | |
| JUAN MANUEL CASTRO MARRERO<br><br>PETICIONARIO<br><br>EX PARTE | TA2025CE00051 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Vega Baja<br><br>Caso Núm. BY2025CV00129<br><br>Sobre:<br><br>ELIMINACIÓN DEL REGISTRO DE OFENSORES SEXUALES ART. 5 LEY 266 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 12 de agosto de 2025.

### **I.**

El 27 de junio de 2025, el señor Juan Manuel Castro Marrero (señor Castro Marrero o peticionario) presentó digitalmente un recurso de *Certiorari* en el que nos solicitó que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Vega Baja (TPI o foro primario) el 9 de junio de 2025, notificada y archivada digitalmente en autos el 11 de junio de 2025.[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la petición de eliminación del Registro de Ofensores Sexuales radicada por el peticionario y, consecuentemente, desestimó con perjuicio la causa de acción.

El 7 de julio de 2025, emitimos una *Resolución* en la que concedimos al Procurador General (parte recurrida) hasta el 17 de julio de 2025 para exponer su posición sobre los méritos del recurso.

---

[1] Véase la Entrada Núm. 24 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Caso (SUMAC) del TPI.

El 15 de julio de 2025, el Pueblo de Puerto Rico, en representación de la Oficina del Procurador General, presentó una *Solicitud de breve término adicional* en la que solicitó una prórroga hasta el 24 de julio de 2025 para exponer su posición.

Al día siguiente, emitimos una *Resolución* en la que le concedimos a la parte recurrida la prórroga según solicitada.

El 24 de julio de 2025, la parte recurrida presentó un *Escrito en cumplimiento de orden* en el que solicitó que confirmemos la *Resolución* recurrida.

Por su parte, el 30 de julio de 2025, el peticionario presentó una *Réplica a escrito en cumplimiento de orden* en la que reiteró su solicitud para que se revoque la determinación del TPI.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de *certiorari*.

**II.**

El caso de marras tuvo su génesis el 15 de enero de 2025, cuando el señor Castro Marrero presentó una *Petición* sobre eliminación del Registro de Ofensores Sexuales.[2] Según indicó, el 12 de julio de 2006, fue sentenciado en el Tribunal Federal para el Distrito de Puerto Rico por el delito de *Possesion of material containing child pornograhy*, 18 USC sec. 2252(a)(4)(B), y es un Ofensor Sexual Tipo I a los fines de la *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores*, Ley Núm. 266-2004, 4 LPRA sec. 536 *et seq.* (Ley Núm. 266-2004). Alegó que cumple con todos los requisitos para que su información sea eliminada del Registro de Ofensores Sexuales, tras cumplir con el término de quince (15) años de mantenerse inscrito en dicho Registro, según dispuesto en la precitada Ley ya que se inscribió por

---

[2] Véase la Entrada Núm. 5 del expediente digital del caso en SUMAC-TPI. La Entrada Núm. 1 del expediente digital adolecía de la firma electrónica para su presentación en SUMAC.

primera vez en el 2009 y, además, por haber mantenido un récord negativo de antecedentes penales por el término de diez (10) años.

El 6 de marzo de 2025, el Ministerio Público presentó una *Moción en contestación a solicitud de eliminación del Registro de Ofensores Sexuales* en la que expresó que el peticionario cumplió con el termino dispuesto en ley para que su información sea eliminada del Registro de Ofensores Sexuales, por ser un Ofensor Sexual Tipo I.[3]

Luego de varios trámites procesales, el 18 de marzo de 2025, el peticionario presentó una *Moción en cumplimiento de orden* mediante la cual incluyó la petición de eliminación de Registro de Ofensores Sexuales presentada ante el Tribunal Federal y otros documentos relacionados a su inscripción en dicho registro solicitadas por el foro primario.[4] Además, en ella adujo que es el TPI el foro con jurisdicción para atender el asunto por lo que solicitó que se declare Ha Lugar la *Petición.*

Posteriormente, el 20 de marzo de 2025, el TPI emitió una *Resolución y Orden* en la que declaró parcialmente Ha Lugar la *Orden* emitida en corte abierta el 5 de marzo de 2025 en términos de que se sometieran ciertos documentos pero ordenó al peticionario presentar una serie de documentos adicionales para el tribunal estar en posición de considerar la *Petición.*[5]

El 21 de abril de 2025, el peticionario presentó una *Moción en cumplimiento con Resolución y Orden* mediante la cual incluyó los documentos solicitados.[6] Además, indicó que durante los años 2020, 2021 y 2022 realizó las gestiones de inscripción por teléfono dado a la situación de la pandemia.

---

[3] Véase Entrada Núm. 12 del expediente digital del caso en SUMAC-TPI.
[4] Véase Entrada Núm. 17 del expediente digital del caso en SUMAC-TPI.
[5] Véase Entrada Núm. 19 del expediente digital del caso en SUMAC-TPI.
[6] Véase Entrada Núm. 22 del expediente digital del caso en SUMAC-TPI.

Consecuentemente, el 9 de junio de 2025, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la *Petición* y desestimó con perjuicio la causa de acción, bajo el fundamento de falta de jurisdicción.[7] El foro primario determinó que el único tribunal con jurisdicción primaria y exclusiva sobre la materia es el Tribunal Federal de Distrito de Puerto Rico tras haber dictado una sentencia condenatoria en el caso ***United States of América v. Juan M. Castro Rivera***, criminal núm. 3:06-CR-00197-001 y denegar una petición para remover al peticionario del Registro de Ofensores Sexuales. Por ello, resolvió que carecía de jurisdicción para alterar un dictamen tomado por el foro federal y el cual no ha renunciado a su jurisdicción sobre el caso. Además, concluyó que el peticionario hizo un *Forum Shopping*, dado a que, deliberadamente, le ocultó información al TPI para intentar conseguir un dictamen a su favor.

Para sustentar su dictamen, el TPI formuló las siguientes determinaciones de hechos:

1. El 12 de julio de 2006, el señor Castro se declaró culpable en el Tribunal Federal para el Distrito de Puerto Rico, en el caso *United States of América v. Juan Manuel Castro-Marrero*, criminal núm. 3:06-CR-00197-001 (HL) de un (1) cargo del delito de *Possesion of material containing child pornograhy. A Class C felony*, 18 USC section 2252(a)(4)(B), cometido en enero de 2006.

2. El 22 de septiembre de 2006, en el caso *United States of América v. Juan Manuel Castro-Marrero*, criminal núm. 3:06-CR-00197-001 (HL), el Juez de Distrito Federal Hector M. Laffitte, emitió una Sentencia. De la misma, citaremos los términos pertinentes a los hechos ante nuestra consideración:

   *The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: THIRTY (30) MONTHS.*
   *The defendant shall surrender to the United States Marshal for the district at noon on November 1, 2006.*
   *SUPERVISED RELEASE*
   *Upon release from imprisonment, the defendant shall be on supervised release for a term of: THREE (3) YEARS UNDER THE FOLLOWING TERMS AND CONDITIONS.*
   *ADDITIONAL SUPERVISED RELEASE TERMS*
   *The defendant will report the address where defendant will reside and any subsequent change of residence to the*

---

[7] Véase Entrada Núm. 24 del expediente digital del caso en SUMAC-TPI.

*Probation Office and shall Register with the State Sex Offender Registration Agency in any State or U.S. Territory where the defendant resides, is employed carries on a vacation, or is a student, as directed by the Probation Officer.*

3. El delito por el cual el señor Castro se declaró culpable en el caso *United States of América v. Juan Manuel Castro-Marrero*, criminal núm. 3:06-CR-00197-001 (HL) se penaliza en el United States Code Annotated, 18 USCA section 2252 es el siguiente:

    Effective: April 30, 2003 to July 26, 2006

    § 2252. Certain activities relating to material involving the sexual exploitation of minors

    (a) Any person who—

    (4) either—

    (B) knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—

    (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

    (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

4. El 27 de julio de 2009, B. Torres, *Unit Manager of the Federal Bureau of Prisons and Correctional Complex*, emitió una carta certificando que el señor Castro cumplió su condena con la siguiente información:

    *To Whom It May Concern:*

    *Mr. Juan M. Castro-Marrero, Register Number 30111-069, was released from the Federal Correctional Complex, Coleman-Low, Coleman, Florida on July 27, 2009. Mr. Castro-Marrero's destination is in San Juan, Puerto Rico traveling through the Orlando International Airport, Spirit Airline's Flight # NK-891. [...]*

5. El 27 de julio de 2009, el señor Castro comenzó su término de tres (3) años de libertad supervisada y el *U.S. Probation Officer* le ordenó al peticionario a registrarse en el Registro de Ofensores Sexuales de cualquier estado, territorio donde trabajara, viviera, estudiara o vacacionara.

6. El 26 de julio de 2012, el señor Castro recibió el *Notice of Expiration of Supervised Release Period* del caso *United States of América v. Juan Manuel Castro-Marrero*, criminal núm. 3:06-CR-00197-001 (HL). Por ende, cumplió con su término de libertad supervisada.

7. El 20 de diciembre de 2022, el señor Castro presentó un *Motion Requesting Order For Removal From Sex Offender Registry* (Docket 20), en el caso *United States of América v. Juan Manuel Castro-Marrero*, criminal núm. 3:06-CR-00197-001 (HL).

8. El 4 de enero de 2023, el Fiscal Federal, presentó *una Motion In Complience With Docket 22* (Docket 23), en el caso *United States of América v. Juan Manuel Castro-Marrero*, criminal núm. 3:06-CR-00197-001 (FAB). Señaló que el señor Castro no presentó ningún documento o fundamento legal que acreditara las alegaciones de su petición de que cualificaba para que sea eliminado del Registro de Ofensores Sexuales.

9. El 13 de enero de 2023, el U.*S. Probation Officer*, presentó un *Motion In Complience With Court Order* (Docket 25), en el caso *United States of América v. Juan Manuel Castro-Marrero*, criminal núm. 3:06-CR-00197 (FAB). Indicó que el señor Castro cumplió con su obligación de registrarse en el Registro de Ofensores Sexuales del 6 de agosto de 2009 hasta 1 de agosto de 2019. Señaló que la Teniente Karen González, Supervisora de la Unidad Registro Personas Convictas por Delitos Sexuales y Abuso Contra Menores le confirmó que surge del expediente del señor Castro que este no cumplió con su obligación de registrarse en el Registro de Ofensores Sexuales en los años 2020, 2021 y 2022.

10. El 13 de enero de 2023, notificado ese mismo día, en el caso *United States of América v. Juan M. Castro Rivera*, criminal no. 3:06-CR-00197 (FAB), el Juez Presidente Francisco A. Besosa, emitió una Orden (Docket 26), denegando la solicitud del señor Castro de que lo removieran del Registró de Ofensores Sexuales. En la misma, indicó lo siguiente: *ORDER re [20] Motion Requesting Order as to Juan M. Castro-Marrero (1): DENIED. Defendant has not complied with the criteria for removal, and has even failed to register for three years.*

11. El señor Castro no presentó una reconsideración o Certiorari en los Foros Federales que tiene jurisdicción exclusiva para revisar la determinación del Juez Presidente Francisco A. Besosa, en el Docket 26.

Inconforme con la determinación del TPI, el peticionario radicó el presente recurso de *certiorari* en el que formuló los siguientes señalamientos de error:

**Primer señalamiento de error**: Erró el Tribunal de Primera Instancia, Sala Superior al concluir que estaba llamado a determinar si tenía jurisdicción para alterar un dictamen emitido por la Corte de Distrito Federal de Puerto Rico, denegando la solicitud de eliminación del Registro de Ofensores Sexuales del peticionario.

**Segundo señalamiento de error**: Erró el Tribunal de Primera Instancia, Sala Superior al concluir que el peticionario incurrió en "fórum shopping".

**Tercer señalamiento de error**: Erró el Tribunal de Primera Instancia, Sala Superior al concluir que no tiene jurisdicción para atender la petición ante su consideración.

**Cuarto señalamiento de error**: Erró el Tribunal de Primera Instancia, Sala Superior al denegar la petición a pesar de que el texto de la Ley es claro e inequívoco y no concede discreción para eliminar al Ofensor Tipo I una vez transcurrido el término de quince (15) años.

El peticionario alegó que el TPI erró a concluir que este intentaba alterar una determinación previa de otro tribunal porque su

solicitud, en esta ocasión, es distinta y basada en otra disposición legal. En cuanto a la discusión de los errores señalados arguyó que la petición radicada en el foro federal la hizo bajo la disposición que permite la eliminación de su información antes de que transcurran los quince (15) años establecidos por la Ley, luego de transcurrido el término de diez (10) años de haberse inscrito y cumpliendo con ciertos requisitos. Alegó que en el caso de marras la petición la hizo en virtud de la regla general que permite la eliminación por el mero transcurso del tiempo.

Por otra parte, adujo que en Puerto Rico no se estableció la manera en que se deba solicitar la eliminación del Registro de Ofensores Sexuales. Sin embargo, señaló que en virtud de la Ley Núm. 266-2004, *supra*, existen dos instancias en las que el Ofensor Sexual Tipo 1 puede ser eliminado: 1) con el mero transcurso de quince (15) años desde su inscripción en el Registro de Ofensores sexuales y 2) cuando haya transcurrido el término de diez (10) años y cumpla con ciertos requisitos adicionales. Por último, sostuvo que no incurrió en *Forum shopping,* sino que presentó una solicitud nueva, bajo una disposición legal distinta. Por lo cual, argumentó que el TPI erró al declararse sin jurisdicción y desestimar con perjuicio su solicitud.

Por su parte, el 24 de julio de 2025, la parte recurrida presentó un *Escrito en cumplimiento de orden.* En este, adujo que no procede la eliminación de la información del peticionario del Registro de Ofensores Sexuales toda vez, contrario a lo que sostiene el peticionario, que el delito por el que este fue sentenciado lo clasifica como Ofensor Sexual Tipo 2. Por ello, señaló que, a tenor con la ley, el peticionario debe permanecer inscrito en el Registro de Ofensores Sexuales por el término de veinticinco (25) años. Señaló que el peticionario comenzó a inscribirse en el año 2009 por lo que no ha alcanzado el término establecido para solicitar que se elimine su

nombre del Registro de Ofensores Sexuales. Así, solicitó que se deniegue la expedición de la petición de *certiorari* o se confirme el dictamen recurrido.

Por último, el 30 de julio de 2025, el peticionario presentó una *Réplica a escrito en cumplimiento de orden* en la que arguyó que este no fue sentenciado por ningún delito del Código Penal de Puerto Rico, 33 LPRA sec. 5001 *et seq.*, y que no fue convicto por poseer y distribuir pornografía infantil. Por ello, sostuvo que es un Ofensor Sexual Tipo 1 y no 2 como alegó la parte recurrida. Además, adujo que la controversia planteada ante nos es sobre la jurisdicción del TPI para atender la petición de eliminación del Registro de Ofensores Sexuales y que dicho asunto no fue discutido por la parte recurrente. Ante esto, sostuvo que la *Resolución* recurrida es contraria a derecho y solicitó su revocación.

En adelante, pormenorizaremos el derecho aplicable al presente recurso.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que el foro revisor posee autoridad para expedir el auto de certiorari sobre materia civil.[8] ***Scotiabank de Puerto Rico v. ZAF Corporation, et als.***, 202 DPR 478 (2019). A su vez, dicha regla sufrió varios cambios fundamentales encaminados a evitar la revisión judicial de aquellas órdenes o resoluciones que dilataban innecesariamente el proceso pues pueden esperar a ser revisadas una vez culminado el mismo, uniendo su revisión al recurso de apelación. ***Medina Nazario v. McNeill Healthcare LLC,*** *supra.* En esa línea, el rol de este foro al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias y con el cuidado que debemos ejercer para no interrumpir injustificadamente el curso ordinario de los pleitos que se están ventilando en ese foro. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

Si el asunto comprendido en el recurso de *certiorari* está en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, entonces este foro ejerce un segundo escrutinio. Este se particulariza por la discreción que se le ha sido conferida al Tribunal de Apelaciones para expedir, autorizar y adjudicar en sus

---

[8] Esta Regla dispone que:

[....]

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

méritos el caso. Para poder ejercer de manera razonable y prudente la facultad discrecional concedida, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que debemos tener ante nuestra consideración al atender una solicitud de expedición de un auto de *certiorari*.[9]

**B.**

En diversas ocasiones, el Tribunal Supremo de Puerto Rico ha expresado que la jurisdicción es el poder o la autoridad que tienen los tribunales para considerar y decidir casos o controversias. ***Beltrán Cintrón y otros v. Estado Libre Asociado,*** 204 DPR 89, 101 (2020), ***Torres Alvarado v. Madera Atiles***, 202 DPR 495, 499-500 (2019); ***Cordero et al. v. ARPe et al.,*** 187 DPR 445, 456 (2012). De igual forma, el Máximo Foro ha reiterado que los tribunales tenemos siempre la obligación de ser celosos guardianes de nuestra propia jurisdicción, pues sin jurisdicción no estamos autorizados a entrar a resolver los méritos de un recurso. ***Shell v. Srio. Hacienda,*** 187 DPR 109, 122-123 (2012); ***Cordero et al. v. ARPe et al.,*** 187 DPR 445, 457 (2012); ***Muni. de San Sebastián v. QMC Telecom***, 190 DPR 652, 660 (2014). Por tal razón, el primer factor a considerar ante toda controversia es el aspecto jurisdiccional. ***Torres Alvarado v. Madera Atiles***, supra, pág. 500.

Cabe resaltar que, los tribunales en Puerto Rico poseen jurisdicción general, por lo que ostentan autoridad para atender cualquier causa de acción que presente una controversia, salvo que

---

[9] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

no tengan jurisdicción sobre la materia. ***Beltrán Cintrón y otros v. Estado Libre Asociado***, supra, pág. 101. Precisamente, "...el Estado a través de sus leyes, puede otorgar o privar de jurisdicción sobre la materia a un tribunal." ***Rodríguez Rivera v. De León Otaño***, 191 DPR 700, 708 (2014). En esencia, "la jurisdicción sobre la materia se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". J. A. Echevarría Vargas, _Procedimiento Civil Puertorriqueño_, 1era ed. rev., 2012, pág. 27. Por ello, cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar el caso sin entrar en los méritos de la controversia. ***Beltrán Cintrón y otros v. Estado Libre Asociado***, supra. Ello, debido a que la falta de jurisdicción no puede ser subsanada, ni el Tribunal puede atribuírsela. ***Pérez Soto v. Cantera Pérez, Inc. et al.***, 188 DPR 98, 105 (2013).

## C.

Mediante la Ley Núm. 28-1997, 4 LPRA ant. sec. 535 _et seq_, se creó el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores (Registro de Ofensores Sexuales). Dicho Registro se creó con el propósito de que las agencias de orden público y la comunidad conozcan el paradero de aquellas personas que han cometido delitos que implican crímenes sexuales violentos o que constituyen abuso contra menores. Exposición de Motivos de la Ley Núm. 28-1997, _supra._ La Ley Núm. 28-1997, _supra_, se creó en cumplimiento con la reglamentación federal establecida en la Ley Púb. Núm. 103-322 de 13 de septiembre de 1994 (108 Stat. 1796), conocida como _Jacob Wettering Crimes Against Children and Sexually Violent Offender Registration Program,_ la cual requería que los estados y territorios de Estados Unidos, incluyendo a Puerto Rico, adoptaran legislación para que las personas convictas por delitos sexuales se registren por un término de diez (10) años.

El Art. 5 de la Ley Núm. 28-1997, *supra*, establecía que:

> [l]a información de la persona convicta por los delitos enumerados en el inciso (a) del Artículo 3 de esta Ley, se mantendrá en el Registro por un período de diez (10) años desde que la persona cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra. Una vez transcurra dicho término, el nombre y los datos de la persona serán eliminados del Registro.

El 9 de septiembre de 2004, la Ley Núm. 28-1997, *supra*, quedó derogada por la Ley Núm. 266-2004, *supra.* El nuevo estatuto dispuso que el Estado, en su función de *parens patrie*, tenía el deber de "continuar ampliando el marco de acción y adoptar un enfoque de carácter preventivo" mediante la "recopilación y divulgación de información relativa a las personas convictas de delitos sexuales y abuso contra menores." Exposición de Motivos de la Ley Núm. 266-2004, *supra.* Asimismo, la Ley Núm. 266-2004, *supra,* estableció que "no tiene un propósito punitivo [sino que] es un medio para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección de nuestra sociedad." Art. 1 de la Ley Núm. 266-2004, *supra.*

Con relación a su aplicación, la ley dispuso que quedarían registradas las personas que, al momento de la aprobación de la Ley Núm. 266-2004, *supra*, tenían la obligación de estar registradas bajo la Ley Núm. 28-1997, *supra.* Art. 3(d) de la Ley Núm. 266-2004, *supra.* De igual forma, la Ley Núm. 266-2004 dispuso que "no tendr[ían] la obligación de registrarse las personas que, al momento de aprobarse [la] Ley, hayan extinguido la pena impuesta por la comisión de alguno de los delitos enumerados". Íd.

En cuanto al término por el cual la información de la persona convicta se mantendría en el Registro, la Ley Núm. 266-2004, *supra*, decretaba que sería por un período mínimo de diez (10) años desde que se cumplió la sentencia impuesta. Art. 5 de la Ley Núm. 266-2004, *supra.* A diferencia de la Ley Núm. 28-1997, *supra*, "esta

nueva ley aplicaba desde que se extinguía la sentencia y no hacía una distinción en cuanto al cómputo para el término de los diez (10) años de inscripción en el Registro, entre si la persona convicta cumplía su sentencia en la libre comunidad, bajo algún beneficio de sentencia suspendida o, por el contrario, estaba recluida en una institución penal." ***Pueblo v. Ferrer Maldonado***, 201 DPR 974, 983-984 (2019). Sin embargo, la Ley Núm. 266-2004, *supra*, "nada dispuso en su versión original sobre la aplicación retroactiva y el momento desde cuando se computa el tiempo que una persona que ya estaba inscrita en el Registro debía permanecer en él." Íd., págs. 988-989.

Posteriormente, fue aprobada la Ley Núm. 243-2011, cuyo propósito fue atemperar las disposiciones de la Ley Núm. 266-2004 con la ley federal, *Adam Walsh Child Protection and Safety Act of 2006*, también conocida como *Sex Offender Registration and Notification Act* (SORNA), 42 USC secs. 16901 *et seq.* En consecuencia, se crearon tres (3) clasificaciones para los ofensores sexuales de acuerdo con el delito sexual cometido. Bajo las mencionadas clasificaciones, el término mínimo para el Ofensor Sexual Tipo I conlleva permanecer en el Registro por quince (15) años, el Ofensor Sexual Tipo II debe estar inscrito veinticinco (25) años y el Ofensor Sexual Tipo III, durante toda la vida. ***Pueblo v. Ferrer Maldonado***, supra, pág. 984.

En consecuencia, el Art. 2 de la Ley Núm. 266-2004, *supra*, según enmendado por la Ley Núm. 243-2011, define un "ofensor sexual" como aquel individuo que ha sido convicto por un delito sexual o su tentativa o conspiración.

Un "delito sexual" incluye lo siguiente:

> (i) un delito que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona;
> (ii) un delito específico contra un menor de edad;
> **(iii) un delito federal, incluyendo los delitos comprendidos bajo la Sección 1152 ó 1153 del Título 18 del United States Code; bajo la Sección 1591 o el**

> **Capítulo 109A, 110 (excluyendo las Secciones 2257, 2257A, ó 2258) ó 117 del Título 18 del United States Code**; o
>
> (iv) un delito militar según establecido por el Secretario de la Defensa bajo la Sección 1150 (a)(8)(C)(i) de la Ley Pública Núm. 105-119 (10 U.S.C. 951 note);
>
> (v) un delito que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona, o un delito específico contra un menor de edad cometido en una tribu indígena reconocida por el gobierno federal;
>
> (vi) una tentativa o conspiración para cometer cualquier delito descrito en los sub-incisos (i) al (v) de este inciso. Íd., inciso (3). (Énfasis nuestro).

Asimismo, en lo pertinente, la mencionada ley define un "Ofensor Sexual Tipo I" como:

> [p]ersonas que resulten convictas por los siguientes delitos o su tentativa o conspiración, cuando se incurre en conducta constitutiva de abuso sexual;
>
> (i) Restricción de la libertad, cuando la víctima fuere menor de dieciocho (18) años, según comprendido en el Artículo 168 (e) de la Ley 149-2004, según enmendada;
>
> (ii) Restricción de libertad agravada, cuando la víctima fuere menor de dieciséis (16) años, según comprendido en el Artículo 131 (e) de la Ley Núm. 115 de 22 de julio de 1974, según enmendada;
>
> (iii) Delito de maltrato a menores, según establecido en los Artículos 75 y 76 de la Ley 177-2003, según enmendada, cuando se incurre en conducta constitutiva de abuso sexual;
>
> (iv) Maltrato agravado conyugal, cuando se cometiere y simultáneamente se incurriere en conducta constitutiva de abuso sexual, en maltrato de un menor, según definido en la Ley 177-2003, según enmendada, según comprendido en el Artículo 3.2 (g) de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada;
>
> (v) Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno; Espectáculos obscenos; Exposiciones deshonestas cuando el acto tuviere lugar en presencia de una persona menor de 16 años, según establecido en los Artículos 106, 113 y 114 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y en los Artículo 155 y 156 de la Ley 149-2004, según enmendada;
>
> (vi) Exposiciones obscenas; Proposición obscena, según tipificados en los Artículos 147 y 148 de la Ley 149-2004, según enmendada;
>
> (vii) Cualquier delito antecedente o sucesor de los mencionados en los sub-incisos (i), (ii), (iii), (iv), (v) o (vi). Íd., inciso (8).

De otra parte, un "Ofensor Sexual Tipo II" es aquella persona que resulte convicta por los siguientes delitos o su tentativa o conspiración cuando la víctima fuere un menor de edad:

> (i) Actos lascivos o impúdicos; proxenetismo o comercio de personas; delitos contra la protección de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía, comprendidos en los Artículos 105, 110 (a) y (c), 111 (a) y 115 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada.
>
> (ii) Actos lascivos, proxenetismo, rufianismo y comercio de personas; producción de pornografía infantil; **posesión y distribución de pornografía infantil**, utilización de un menor para pornografía infantil; corrupción de menores cuando se admitiere o retuviere a un menor en una casa de

prostitución o de comercio de sodomía, comprendidos en los Artículos 137 (e), 144, 153 (a), 157, 158 y 159 de la Ley Núm. 149 de 18 de junio de 2004.

(iii) Agresión Sexual, comprendida en los Artículo 142 (f), 142 (h), 142 (i) de la Ley Núm. 149 de 18 de junio de 2004.

(iv) Un Ofensor Sexual Tipo I convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual o su tentativa o conspiración.

(v) Cualquier delito o su tentativa antecedente o sucesor de los mencionados en los sub-incisos (i), (ii) o (iii). Íd., inciso (9). (Énfasis nuestro).

De igual forma, la Ley Núm. 243-2011, *supra*, "restituyó el momento desde cuando se comienza a contar el término de inclusión en el Registro, según la sentencia impuesta." ***Pueblo v. Ferrer Maldonado***, supra, pág. 985. Es decir, conforme a las enmiendas, se hizo la distinción entre las personas que cumplen su sentencia en una institución correccional y aquellas que la cumplen en la libre comunidad. Íd. En cuanto a la retroactividad de estas enmiendas, "la ley expresamente dispone que –salvo los incisos (f) y (g) del Art. 4– las demás disposiciones podrán tener efecto retroactivo." Íd., pág. 985; Véase, además, Art. 15 de la Ley Núm. 243-2011, *supra*.

**IV.**

En el caso de marras, el TPI denegó una petición de eliminación del Registro de Ofensores Sexuales radicada por el señor Castro Marrero bajo el fundamento de falta de jurisdicción. El TPI entendió que foro federal mantiene la jurisdicción del caso por haber dictado una sentencia condenatoria en contra del peticionario y por haber denegado una idéntica petición previa de eliminación de su información de dicho registro. El TPI estimó que bajo la doctrina de cuestión federal carecía de jurisdicción para alterar un dictamen emitido por el Tribunal Federal. Además, determinó que el peticionario realizó *Forum Shopping* al acudir al TPI intentando conseguir un dictamen a su favor.

Para el peticionario, el TPI erró al denegar la petición de eliminación del Registro de Ofensores Sexuales a pesar de que éste había cumplido con el término de quince (15) años inscrito que establece la Ley Núm. 266-2004, *supra,* para los Ofensores Sexuales

Tipo I. Según alegó, en el foro federal, el señor Castro Marrero presentó la petición bajo el fundamento de la excepción de los diez (10) años con un récord negativo de antecedentes penales, pero que, en el caso de marras, solicitó la eliminación al amparo de la regla general del mero transcurso del tiempo. Por ello, manifestó que no está solicitando que se altere una determinación del Tribunal Federal. Alegó que no incurrió en *Forum shopping* porque la solicitud no la hizo bajo la misma disposición que en el foro federal.

Por su parte, el Ministerio Público arguyó que el peticionario aún no ha cumplido con el término establecido de veinticinco (25) años de inscripción para aquellos Ofensores Sexuales Tipo 2, categoría que le corresponde por el delito por el cual fue sentenciado en el Tribunal Federal.

Surge del expediente ante nuestra consideración que el señor Castro Marrero fue sentenciado en el Tribunal Federal para el Distrito de Puerto Rico por el delito de *Possesion of material containing child pornography*, a una pena de treinta (30) meses de cárcel y tres (3) años de probatoria. El Tribunal Federal condicionó su probatoria a que se inscribiera en el registro de ofensores sexuales del lugar de su residencia, trabajo o donde vacacionara. En el 2012, el peticionario cumplió con la probatoria impuesta y en el 2022, presentó una petición ante el foro federal para la eliminación de su información del Registro de Ofensores Sexuales. El peticionario se registró en el Registro de Ofensores Sexuales de Puerto Rico por primera vez en el año 2009, cuando se trasladó a Puerto Rico tras salir de prisión en el Estado de Florida.

El Tribunal Federal denegó la solicitud porque el peticionario no puso en posición al foro federal para determinar que este cumplía con todos los requisitos para que su información fuese eliminada del Registro de Ofensores Sexuales. Tras la denegatoria, el peticionario radicó una nueva petición ante el TPI.

Nótese que la *Petición* está basada en la misma disposición a al que hizo referencia ante el Tribunal Federal, a saber, la excepción contenida en el Artículo 5 de la Ley Núm. 266-2004, *supra*, sobre diez (10) años con récord negativo de antecedentes penales y quince (15) años inscrito bajo la clasificación de Ofensor Sexual Tipo 1.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI tenía jurisdicción para atender la petición.

No obstante, en virtud de la Ley Núm. 266-2004, *supra*, que crea el Registro de Ofensores Sexuales, el delito por el cual el peticionario fue sentenciado en el Tribunal Federal es el equivalente al Artículo 147 del Código Penal de Puerto Rico, *supra*, que tipifica como delito el acto de poseer o distribuir pornografía infantil y se clasifica en nuestra jurisdicción como Ofensor Sexual Tipo 2. El precitado artículo establece para cada uno de estos actos una pena en particular por lo que los distingue uno de otro sin que sea necesaria la imputación de ambos actos por un mismo hecho.

Esto significa que el término por el cual el peticionario debe mantenerse inscrito en el Registro de Ofensores Sexuales es de veinticinco (25) años, término que aún no ha cumplido. Por lo cual, independientemente del foro que ostente la jurisdicción para atender la petición, a este aun no le corresponde la eliminación de su información del Registro de Ofensores Sexuales.

Siendo así, el peticionario, como Ofensor Sexual Tipo 2, no ha cumplido con el término exigido de veinticinco (25) años inscrito en el Registro de Ofensores Sexuales por lo que aún no le corresponde la eliminación de su información del registro. Siendo así, no procedía que se concediera su solicitud debido a que el peticionario no cumple con los requisitos necesarios para que se le conceda la petición dado al término por el que tiene que estar inscrito.

Por los fundamentos pormenorizados, se expide el auto de *certiorari* y se modifica la determinación a los efectos de que no procede conceder la petición de remoción del Registro de Ofensores Sexuales por no cumplir con el término aplicable al peticionario.

**V.**

A tenor con lo expuesto precedentemente, se expide el auto de *certiorari* y se modifica lo resuelto por el TPI en los términos previamente expuestos.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones